UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES DAVID KARNATH,

                Plaintiff,

  v.

TRACY DANIELS,

                Defendant.

Case No. C08-1002-RSM-BAT

**REPORT AND RECOMMENDATION**

INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff James Karnath has filed a civil rights action under 42 U.S.C. § 1983. Plaintiff alleges in his second amended complaint that defendant Tracy Daniel violated his Eighth Amendment right to be free from cruel and unusual punishment when defendant ordered, and participated in, an assault on plaintiff in November 2007.[1] Defendant Daniel has now filed a motion for summary judgment and plaintiff has filed a response to defendant's motion. The Court, having reviewed defendant's motion, and the balance of the record, concludes that

---

[1] Plaintiff's second amended complaint contains a series of additional allegations concerning harm plaintiff claims he suffered while confined at various Department of Corrections facilities, as well as allegations concerning the lawfulness of his current confinement. However, the only allegation implicating Tracy Daniel, the lone defendant in this action, is that concerning the November 2007 assault.

REPORT AND RECOMMENDATION - 1

defendant's motion for summary judgment should be **GRANTED** and this action should be **DISMISSED** with prejudice.

BACKGROUND

Defendant Tracy Daniel is a Correctional Unit Supervisor at the Monroe Correctional Complex, Washington State Reformatory Unit ("WSR"), where he is responsible for overseeing operations of an offender housing unit. (Dkt. No. 128, Ex. 1 at 1.) On November 26, 2007, plaintiff, who was then housed in defendant Daniel's unit, was called in to defendant's office in response to kites plaintiff had submitted requesting to speak with defendant. (*Id*.) Plaintiff alleged in one of his kites that he had been assaulted by another offender. (*Id*.) He alleged in another kite that a member of the WSR staff, Sergeant Lamm, made comments to him which he deemed to be potentially life threatening. (*See id*. and Attach. A.) Plaintiff also made allegations in that kite concerning Sergeant Lamm's sexuality. (*See id*., Ex. 1 at 1-2.)

Given the nature of the allegations made in the kites, defendant Daniel decided to place plaintiff on involuntary protective custody/administrative segregation status pending an investigation into his claims. (*See id*., Ex. 1 at 2 and Attach. B.) When defendant informed plaintiff of this decision, and directed plaintiff to "cuff up" so he could be escorted to the protective custody/administrative segregation unit, plaintiff refused to comply and attempted to walk out of defendant's office. (*Id*., Ex. 1 at 2.) Plaintiff was ordered to return to the office by other WSR staff and he complied. (*Id*.) Subsequently, plaintiff was ordered several times to stand and be cuffed and he repeatedly refused to comply. (*See id*. and Attach. B and D.)

Because of plaintiff's repeated refusals to comply, defendant directed a correctional officer to retrieve a video camera in order to record a use of force incident should one become necessary. (*See id*. and Attach. D.) When the officer returned with the video camera, plaintiff

REPORT AND RECOMMENDATION - 2

was again directed to "cuff up" and plaintiff again failed to comply. (*See* Dkt. No. 128, Ex. 1 at 3 and Attach. D.) At that point, plaintiff was taken to the ground by two WSR officers. (*See id.* and Attach. C at 1, 2 and 4, and Attach. D at 1.) Defendant, together with another WSR officer, controlled plaintiff's legs to assist the two officers who were attempting to cuff plaintiff. (*Id.* and Attach. D.) After plaintiff was cuffed, he was escorted to the protective custody/administrative segregation unit. (*Id.*, Ex. 1 at 3.) Once there, plaintiff was examined by medical personnel and a one centimeter superficial abrasion on plaintiff's right wrist was the only injury noted. (*See id.*, Ex. 1 at 3-4 and Attach. E.)

Several days later, plaintiff's left wrist was x-rayed after plaintiff apparently complained of pain and swelling in that wrist, but the x-rays revealed no fracture. (*See* Dkt. No. 104-2 at 2-3.) Subsequent offers by medical personnel to repeat the x-rays and schedule an orthopedic evaluation were rejected by plaintiff. (*See* Dkt. No. 128, Ex. 2, Attach. A at 3 and Attach. B.)

## DISCUSSION

### Summary Judgment Standard

Summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Id.* Material facts are those which might affect the outcome of the suit under governing law. *Id.*

REPORT AND RECOMMENDATION - 3

In response to a properly supported summary judgment motion, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts demonstrating a genuine issue of fact for trial and produce evidence sufficient to establish the existence of the elements essential to his case. *See* Fed. R. Civ. P. 56(e). A mere scintilla of evidence is insufficient to create a factual dispute. *See Anderson*, 477 U.S. at 252. In ruling on a motion for summary judgment, the court is required to draw all inferences in a light most favorable to the nonmoving party. *Id*. at 248. The court may not weigh the evidence or make credibility determinations. *Id*.

## Section 1983 Standard

In order to sustain a cause of action under 42 U.S.C. §1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

## Eighth Amendment

Plaintiff alleges that defendant Tracy Daniels violated his Eighth Amendment right to be free from cruel and unusual punishment when he ordered, and personally participated in, a brutal physical assault on plaintiff. (Dkt. No. 104 at 7.) Plaintiff contends that the assault was unprovoked, that the use of force was extreme, and that defendant Daniels' actions caused him severe pain and irreparable injury as evidenced by medical tests showing a broken wrist. (*Id*.)

REPORT AND RECOMMENDATION - 4

The Eighth Amendment guarantees that individuals convicted of crimes will not be subject to cruel and unusual punishment. However, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. *Ingraham v. Wright*, 430 U.S. 651, 670-71 (1977). To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety. *Whitley v. Albers*, 475 U.S. 312 (1986).

When a prisoner alleges the excessive use of force under the Eighth Amendment, the "core judicial inquiry" is whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). Among the factors that may be appropriate to consider in determining whether the use of force in any particular instance was wanton and unnecessary are the presence or absence of serious injury, the need for application of force, the relationship between the need for force and the amount of force used, the threat "reasonably perceived by the responsible officials," and, "any efforts made to temper the severity of a forceful response." *See id*. at 7.

Defendant argues in his summary judgment motion that plaintiff's Eighth Amendment claim must fail because plaintiff has not presented any evidence showing that he sustained an actual injury during the use of force incident, nor has he presented any evidence showing that defendant's use of force rises to the level of cruel and unusual punishment. (*See* Dkt. No. 128 at 6-8.) Plaintiff argues in his response to defendant's motion that the motion is invalid because it was filed after plaintiff served a notice of default/default judgment and because defendant failed to attach to his declaration in support of his summary judgment motion a copy of an inmate kite referenced in the declaration. (*See* Dkt. No. 143 at 6-7.) In addition to these procedural

REPORT AND RECOMMENDATION - 5

arguments, plaintiff also argues that there exists a genuine issue of material fact pertaining to defendant Daniel's directive that plaintiff "cuff up." (Dkt. No. 143 at 7.) Plaintiff appears to contend that he was ordered to sit down in the chair in defendant's office, not to stand and "cuff up."[2] (*Id.*)

Plaintiff's procedural arguments are frivolous. No default judgment has been entered in this action and, thus, defendant's summary judgment motion is properly before the Court. Furthermore, the fact that a document referenced in defendant's declaration was not attached to the declaration does not violate the provisions of Fed. R. Civ. P. 56(e)(1), as alleged by plaintiff, and certainly does not invalidate defendant's entire motion.[3] Having briefly addressed plaintiff's procedural challenges to defendant's motion, the Court now turns to the substance of that motion and plaintiff's excessive force claim.

As noted above, one of the relevant considerations in evaluating a claim of excessive force is the presence of absence of serious injury. Plaintiff contends that he suffered a broken wrist as a result of the November 2007 use of force incident. However, the evidence in the record shows that the only injury visible and/or reported immediately following the incident was a small, superficial abrasion on plaintiff's right wrist. (*See* Dkt. No. 128, Ex. 1, Attach. E.)

---

[2] The Court notes that plaintiff did not submit any evidence in conjunction with his response to defendant's summary judgment motion. (*See* Dkt. No. 143.) However, plaintiff did submit to the Court, in conjunction with his second amended complaint, copies of the medical records relevant to the injury he claims to have suffered in the November 2007 use of force incident. (*See* Dkt. No. 104-2.) Plaintiff also submitted to the Court, in June 2011, a DVD which contains a video of the incident in question. (*See* Dkt. No. 120.) The Court has considered these materials in making its recommendation regarding the appropriate disposition of defendant's summary judgment motion.

[3] Rule 56(e)(1) provides that "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . give an opportunity to properly support or address the fact."

REPORT AND RECOMMENDATION - 6

Several days after the incident, x-rays were taken of plaintiff's left wrist, apparently in response to complaints of pain and swelling, but those x-rays did not reveal any fracture. (*See* Dkt. No. 104-2 at 2, 3 and 14.) In fact, none of the medical records supplied by plaintiff support his contention that he suffered a broken wrist, or any other serious injury, as a result of the use of force incident. (*See* Dkt. No. 104-2.)

The video supplied by plaintiff also undermines his contention that he suffered severe pain and irreparable injury as a result of the use of force incident. The video shows not only the use of force incident, but also plaintiff's subsequent transfer from defendant's office to the segregation unit. (*See* Dkt. No. 120.) Plaintiff gives no indication in the video that he was injured or in pain. (*See id.*) In sum, there is no evidence in the record that plaintiff suffered any serious injury as a result of the use of force incident in November 2007.

Other relevant considerations in evaluating a claim of excessive force are the need for application of force and the relationship between the need for force and the amount of force used. Plaintiff claims that the use of force was unprovoked and extreme. However, the evidence in the record demonstrates the contrary. Defendant's declaration, and the documents submitted in support thereof, establish that plaintiff was directed to "cuff up" on multiple occasions and that he refused to comply. (*See* Dkt. No. 128, Ex. 1, Attach. C and D.) On the video supplied by plaintiff, an officer can be heard asking plaintiff if he is refusing to cuff up and plaintiff appears to ignore the inquiry as he continues to describe his grievances to defendant Daniel. (*See* Dkt. No. 120.) When plaintiff ignored the inquiry about his refusal to cuff up, two corrections officers, who had been standing by, approached plaintiff, took hold of his arms, and pulled him forward out of his chair and face first onto the floor. (*Id.*) Defendant Daniel and another corrections officer controlled plaintiff's legs while the two original officers applied handcuffs.

REPORT AND RECOMMENDATION - 7

1  (*See* Dkt. No. 120.) The officers then brought plaintiff to his feet and escorted him out of

2  defendant's office and to the segregation unit. (*Id*.)

3        While plaintiff did not appear to pose a physical threat to defendant or to the other

4  officers present prior to the application of force, the record makes clear that plaintiff was

5  nonetheless being non-compliant by refusing directives to "cuff up." Plaintiff does not have the

6  discretion to simply disregard clear and reasonable directives from corrections staff who are

7  tasked with maintaining order and discipline within the institution. While removing plaintiff

8  from his chair to the floor was not a delicate process, it does not appear that corrections staff

9  used any more physical force than necessary to restrain plaintiff and escort him to the

10 segregation unit.

11       Defendant has demonstrated, through his evidence and arguments, that the decision to use

12 force against plaintiff on November 26, 2007, was not undertaken maliciously and sadistically

13 for the purpose of causing harm but was instead undertaken in an effort to maintain discipline.

14 The limited evidence and argument presented by plaintiff does not create a genuine issue of

15 material fact for trial. In fact, plaintiff's evidence actually serves to reinforce the conclusion that

16 defendant did not violated plaintiff's right to be free from cruel and unusual punishment.

17 Accordingly, defendant is entitled to judgment as a matter of law with respect to plaintiff's

18 Eighth Amendment claim.

19 //

20 //

21 //

22 //

23 //

## CONCLUSION

Based upon the foregoing, this Court recommends that defendant's motion for summary judgment be **GRANTED**, and that plaintiff's second amended complaint and this action be **DISMISSED** with prejudice. A proposed order accompanies this Report and Recommendation.

DATED this 18th day of October, 2011.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 9